UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO.: 23-cv-60770-AHS

MONARCH AIR GROUP, LLC d/b/a
MERCURY JETS, a Florida limited
liability company, and DAVID
GITMAN,

      Plaintiffs,

 vs.

JPMORGAN CHASE BANK, N.A., a
foreign profit corporation,

      Defendant.

**DEFENDANT JPMORGAN CHASE BANK, N.A.'S CORRECTED[1] DISPOSITIVE
MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT WITH PREJUDICE,
OR, IN THE ALTERNATIVE, TO STRIKE IMPERTINENT, IMMATERIAL
AND SCANDALOUS MATTER FROM AMENDED COMPLAINT**

---

[1] This Corrected Motion is being filed to correct the line spacing of the Dispositive Motion to
Dismiss Plaintiffs' Amended Complaint with Prejudice, or, in the Alternative, to Strike
Impertinent, Immaterial and Scandalous Matter from Amended Complaint [DE 21]. In DE 21,
Defendant used one and one-half line spacing pursuant to Southern District of Florida Local Rule
5.1, rather than double-spacing per the Notice of Court Practice [DE 9]. Plaintiffs' counsel has
consented to the filing of this Corrected Motion.

Defendant, JPMorgan Chase Bank, N.A. ("Chase"), pursuant to Federal Rule of Civil Procedure 12(b)(6), moves to dismiss *with prejudice* the Amended Complaint [DE 17] filed by Plaintiffs, Monarch Air Group, LLC ("Monarch") and David Gitman ("Gitman"). Alternatively, Chase moves pursuant to Rule 12(f) to strike impertinent and scandalous matter therefrom.

## INTRODUCTION

This action involves the same parties and wire transactions as an action that has been pending in this District since late 2021 and is an obvious attempt to bring claims that should have been brought in the 2021 case. Plaintiffs filed their Complaint [DE 1] in this action on April 26, 2023. In an effort to plead around the dispositive issues raised in Chase's initial motion to dismiss [DE 15], Plaintiffs voluntarily amended. The Amended Complaint fares no better, and actually further elucidates why the claims raised in this action should have been brought earlier.

The Court should not indulge Plaintiffs' strategic maneuvering, as it violates principles of res judicata and claim-splitting. Moreover, Plaintiffs' claims, they fail as a matter of law as they attempt to impose obligations on Chase that are inconsistent with (a) the contract sued upon, and (b) Florida's Uniform Commercial Code, §§ 670.101 et. seq., Fla. Stat. ("Article 4A"). Plaintiffs cannot—under any set of facts—allege another claim arising from the wire transactions at issue.

## BACKGROUND

### I.    This Action.

According to the Amended Complaint, Monarch provides private air charter and aircraft management services. DE 17 at ¶ 17. Monarch's customers—some of whom supposedly hold bank accounts with Chase—pay Monarch for its services via wire transfer or Automated Clearing House (ACH) transactions. *Id.* at ¶¶ 20, 21, 26. Plaintiffs alleged Monarch's principal, Gitman, also pays certain business and personal expenses to his creditors—some of whom also allegedly hold accounts with Chase—via wire transfer or ACH transactions. *Id.* at 22, 23, 27.

Plaintiffs allege that around July 2020, Chase placed them on an anti-money laundering interdiction list and supposedly de-banked Plaintiffs. *Id.* at ¶ 28. Chase also allegedly "refuse[d] to process wires and ACH payments": (a) from Monarch's customers who held accounts with Chase if the wires were directed to Plaintiffs; (b) from Plaintiffs to their business counterparties if such counterparties held accounts with Chase; and (c) where Chase acted as an intermediary bank in a transaction involving Plaintiffs. *Id.* at ¶¶ 27-32, 46, 54. Plaintiffs allege Chase's scrutiny arose from its investigation of Plaintiffs after Chase received a congressional subpoena seeking information concerning Monarch. *Id.* at ¶¶ 38-46. Plaintiffs allege Chase (a) supposedly relied on an allegedly false blog post discussing Plaintiffs' criminal behavior, (b) unreasonably found certain "round number" transactions in Plaintiffs accounts to be typical of money laundering, and (c) "wildly" claimed Plaintiffs could have interfered with the 2016 presidential election. *Id.* As a result, Plaintiffs claim Chase improperly "rejected" or "canceled"[2] wire and ACH transactions involving Plaintiffs.

Plaintiffs filed a two-count Amended Complaint against Chase for (a) breach of contract, and (b) violation of §§ 670.302 and 670.402, Fla. Stat. To support the breach of contract claim, Plaintiffs attach a Deposit Account Agreement ("DAA") between Chase and its account holders effective as of March 17, 2019, but the DAA only highlights the deficiencies of Plaintiffs' claims.

## II.   *Monarch I.*

Plaintiffs' allegations in this action are all too familiar to Chase. On October 29, 2021, Plaintiffs filed an action against Chase styled *Monarch Air Group, LLC d/b/a Mercury Jets, et. al.*

---

[2] Plaintiffs' allegations as to whether Chase actually "accepted" the wires are contradictory. On the one hand, Plaintiffs allege Chase "rejected" or "refused to process" the wires (DE 17 at ¶¶ 29-33, 54), which means Chase did not "accept" the transfers under Article 4A. Fla. Stat. § 670.21(d). But Plaintiffs also allege Chase "accepted" or "processed" the transactions, but later "cancelled" them. DE 17 at ¶¶ 96-99, 106-107. Rejection and cancellation are governed by distinct sections of Article 4A, neither of which Plaintiffs sue under. *Compare* Fla. Stat. § 670.21 *with* § 670.211.

*v. JPMorgan Chase Bank, N.A.*, Case No. CACE21019694 in the Circuit Court of the Seventeenth Judicial Circuit, Broward County, Florida ("*Monarch I*").[3] Chase removed *Monarch I* to the United States District Court for the Southern District of Florida, where it was assigned to the Honorable William P. Dimitrouleas as Case No. 21-62429-CIV. In *Monarch I*, Plaintiffs asserted claims against Chase for defamation and tortious interference arising from alleged defamatory statements made in connection with Chase's rejections of the exact same wire transactions that Plaintiffs allege Chase wrongfully refused to honor in this action.

On May 12, 2023, Judge Dimitrouleas granted summary judgment in favor of Chase and entered a Final Judgment, terminating the claims against Chase. Judge Dimitrouleas found Chase's statements were protected by Florida's qualified privilege for certain business-related communications, and Plaintiffs failed to offer any evidence that Chase acted with express malice, as required to overcome the privilege, in telling Plaintiffs' customers that Chase was unable to execute the transactions due to sanctions and/or internal Chase policy. RJN-3 at pp. 5-11. Plaintiffs thereafter filed a Motion for Relief from Judgment and a Motion for Discovery to Support Their Motion for Relief from Judgment (collectively, the "Post-Judgment Motions"). *See* Supp. RJN.

The only difference between *Monarch I* and this action is Plaintiffs claims are based upon different legal theories. But regardless of the title Plaintiffs ascribe, the lawsuits still arise from a common nucleus of facts such that the claims asserted here should not have been split from those

---

[3] On May 25, 2023, Chase filed a Request for Judicial Notice of Related 2021 Action [DE 16] (the "RJN"), which attaches as Exhibits the following filings from *Monarch I*: (1) the docket; (2) the operative Second Amended Complaint (the "*Monarch I* Complaint"); (3) the Order Granting Defendant's Motion for Summary Judgment (the "Summary Judgment Order"); and (4) the Final Judgment. Citations to the docket, the *Monarch I* Complaint, the Summary Judgment Order, and the Final Judgment are in the following format, respectively: RJN-1, RJN-2, RJN-3 and RJN-4. On June 30, 2023, Chase supplemented the RJN [DE 22] (the "Supp. RJN").

in *Monarch I*. Moreover, the claims here fail as a matter of law for independent reasons, namely: (a) Plaintiffs fail to allege standing as a third-party beneficiary of the DAA they are suing on in Count I; (b) Count I is otherwise contradicted by the plain language of the DAA; (c) Plaintiffs lack standing to sue Chase under Article 4A as they were not in privity with Chase in any of the transactions; and (d) Count II attempts to impose obligations on Chase that are inconsistent with Article 4A. The Amended Complaint should therefore be dismissed with prejudice.

## ARGUMENT

To survive a motion to dismiss, a complaint must allege facts sufficient to state a claim to relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "When the allegations of the complaint, however true, could not raise a claim for entitlement to relief, this basic deficiency should be exposed at the point of minimum expenditure of time and money by the parties and the court." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007). This requires allegations that establish "more than a sheer possibility that a defendant has acted unlawfully," or that "'merely consistent with' a defendant's liability." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557). Although well-pled facts are to be accepted as true, "threadbare recitals of a cause of action's elements, supported by mere conclusory statements" must be disregarded. *Iqbal*, 556 U.S. at 678.

I.     **This Action is Barred by the Principles of Res Judicata and Claim Splitting.**

A.     **Res Judicata Bars Plaintiffs' Claims.**

Res judicata, or claim preclusion, bars a plaintiff from litigating claims that were ***or could have been*** raised in a prior lawsuit where the prior lawsuit involved: (a) a final judgment on the merits; (b) a court of competent jurisdiction; (c) the same parties or their privies as the current claims; and (d) the same causes of action as the current claims. *Mann v. Palmer*, 713 F.3d 1306, 1311 (11th Cir. 2013).

The first three elements are easily established. The U.S. District Court for the Southern District of Florida is a court of competent jurisdiction, and the Final Judgment incorporating the Summary Judgment Order and findings is a final judgment on the merits. *Yacht Club on the Intercoastal Condo. Ass'n, Inc. v. Lexington Ins. Co.*, 2013 WL 6189181, at *2 (S.D. Fla. Nov. 26, 2013).[4] Additionally, the parties to both actions (i.e., Monarch, Gitman and Chase) are identical.

The final element—"same cause of action"—is also indisputably met. Even though the claims asserted here were not raised in *Monarch I*, they arise out of the same nucleus of facts as the defamation and tortious interference claims asserted in *Monarch I*. "In determining whether the causes of action are the same, a court must compare **the substance of the actions, not their form**….[I]f a case arises out of the same nucleus of operative fact, or is based upon the same factual predicate, [then] the two cases are really the same 'claim' or 'cause of action' for purposes of res judicata." *Mann*, 713 F.3d at 1311 (emphasis added); *see also NAACP v. Hunt*, 891 F.2d 1555, 1561 (11th Cir. 1990) (res judicata applies "to all legal theories and claims arising out of the same nucleus of operative fact"); *Davila v. Delta Air Lines, Inc.*, 326 F.3d 1183, 1187 (11th Cir. 2003) (plaintiff may not split his case into parts, or bring claims based on different legal theories at different times).

The claims here arise out of the same factual predicate as those asserted in *Monarch I*. Specifically, the *Monarch I* Complaint alleged Chase defamed Plaintiffs and tortiously interfered with their business relationships when Chase communicated to Plaintiffs' customers the reasons Chase could not complete their wire transactions. RJN-2 at ¶¶s 12, 15, 21-23, 44-46. Here, Plaintiffs claim Chase's refusal to complete those **exact same** wire transactions also gave rise to breach of contract and UCC claims.

---

[4] Even if Plaintiffs appeal the Final Judgment, "the established rule in the federal courts is that a final judgment retains all of its res judicata consequences pending decision of the appeal." *Jaffree v. Wallace*, 837 F.2d 1461, 1467 (11th Cir. 1988).

Perhaps the most glaring evidence of the overlap in the two lawsuits is the nearly identical allegations in the operative pleadings. *Compare* RJN-2 at ¶¶s 1-10, 11-14 *with* DE 17 at ¶¶s 11-18, 22-24, 26-34. Plaintiffs copied and pasted many of the allegations from the *Monarch I* Complaint in their Amended Complaint here. These allegations describe the same series of transactions and make plain both actions arise from the same nucleus of facts concerning Chase's alleged rejection or cancellation of wire transactions to or from Plaintiffs' customers or business counterparties. *See e.g.*, RJN-2 at ¶ 12 *and* DE 17 at ¶¶ 26-27 (explaining how Monarch's customers hold bank accounts with Chase, and how Gitman must process payments to individuals banking with Chase); RJN-2 at ¶ 13 *and* DE 1 at ¶¶ 29-32 (explaining how Chase began rejecting or cancelling the payment orders placed by Plaintiffs' customers or from Plaintiffs to Chase customers). Moreover, even the damages sought in this action were previously sought in *Monarch I. Compare* RJN-2 at ¶¶ 23, 29, 35, 47 (Chase's rejection of wire transactions, defamatory statements, and interference with Plaintiffs' business relationships caused Plaintiffs damages, including the loss of business) *with* DE 17 at ¶ 91 (Chase's alleged breach of the DAA caused Plaintiffs damages, including the loss of business). Importantly, in their Responses to Chase's Second Set of Interrogatories served in *Monarch I*, Plaintiffs identified damages in the nature of credit card processing fees and cancelled contracts, which are similarly sought in paragraphs 91 and 107 of the Amended Complaint in this action. Supp. RJN-3 at p. 4 (Interrogatory 5).

The overlap does not stop with the pleading allegations. It cannot be lost on the Court that— at the time this action was filed—the amendment deadline in *Monarch I* had expired (on April 21, 2022). RJN-1 at DE 29. Plaintiffs already availed themselves of one opportunity to amend after the deadline in *Monarch I* expired with the filing of their Second Amended Complaint. RJN-1 at DE 77; RJN-2. Since the time this action was filed, the Court in *Monarch I* entered the Summary

Judgment Order and a Final Judgment in favor of Chase. RJN-3; RJN-4. Post-judgment briefing in *Monarch I* further buttresses a finding that this action is barred by the doctrines of res judicata and improper claim splitting. The Post-Judgment Motions generally complain about Chase's (a) alleged failure to timely or fully provide information responsive to Plaintiffs' discovery requests, and (b) use of information allegedly withheld or improperly redacted in discovery, including information relating to the Congressional Subpoena, round-number transactions, and blog posts. *See gen.* Supp. RJN-1 at pp. 8-17; 23-25; Supp. RJN-2 at pp. 1-8.

Plaintiffs reiterate those same general grouses in the Amended Complaint here. DE 17 at ¶¶ 8, 35-53; 68-75. Critically, Plaintiffs admit this action was filed because "[a]s a consequence [of Chase's alleged discovery violations in *Monarch I*], Plaintiffs could not bring claims based on JPMC's ongoing actions after the pleading amendment deadline or based on the critical, late-produced discovery until they were unable to do so in the Defamation Case." *Id.* at ¶ 75. To the extent Chase's alleged misconduct in *Monarch I* precluded Plaintiffs from bringing claims that otherwise should have been filed therein, Plaintiffs' remedy lies in seeking relief from the Court in *Monarch I* (which Plaintiffs are doing). Plaintiffs cannot now use this case as a way to circumvent their failure to timely raise the claims in *Monarch I*, or as a way to attack alleged discovery violations or rulings occurring in *Monarch I*.

Plaintiffs could have brought their claims in *Monarch I*—and because all other elements are met—this action is barred by res judicata.[5]

**B.    Plaintiffs Improperly Split the Claims in this Action from Those Brought in *Monarch I*.**

---

[5] The Amended Complaint gratuitously adds that Chase continues to reject the wire and ACH transactions through the filing of this action. DE 17 at ¶ 54. Such allegation does not affect the analysis as one of the remedies Plaintiffs seek in this action is an injunction ordering Chase to honor the wire and ACH transactions. *Id.* at pp. 15, 17 ("Wherefore" clauses). This remedy was available to Plaintiffs when they filed *Monarch I*, and Plaintiffs could have requested it then.

It is well-settled that plaintiffs "may not file duplicative complaints in order to expand their legal rights." *Vanover v. NCO Fin. Servs., Inc.*, 857 F.3d 833, 841 (11th Cir. 2017). The claim-splitting doctrine ensures plaintiffs do not "present only a portion of the grounds upon which relief is sought and leave the rest to be presented in a second suit, if the first fails." *Id.* In essence, a plaintiff is required to assert all of its claims arising from a common set of facts in a single lawsuit. *Klayman v. Porter*, No. 22-13025, 2023 WL 2261814, at *3 (11th Cir. Feb. 28, 2023) (affirming dismissal of second suit where both cases arose from same "factual predicate"). The doctrine prevents plaintiffs from pursuing a second lawsuit before the first suit reaches a final judgment, promotes judicial economy, and shields parties from vexatious or duplicative litigation. *Id.*

The Eleventh Circuit applies a two-factor test to determine if the doctrine applies: "(1) whether the case involves the same parties and their privies; and (2) whether separate cases arise from the same transaction or series of transactions." *Vanover*, 857 F.3d at 841-42. In other words, the court looks at whether the two actions are "based on the same nucleus of operative facts," and considers whether the transactions are related in time, space, origin, or motivation and form a convenient trial unit. *Id.* at 842. Like res judicata, the claim-splitting doctrine focuses on "whether the first suit, assuming it were final, would preclude the second suit." *Id.* at 841.

In *Vanover*, the plaintiff filed her first lawsuit against the defendant for violations of the Telephone Consumer Protection Act based upon calls the defendant made to plaintiff's cell phone. *Id.* at 836. One year later, the plaintiff filed a second lawsuit, alleging violations of the Fair Debt Collection Practices Act arising from calls placed to plaintiff's residential phone and to third parties during a different time period. *Id.* at 842. After removal, the district court dismissed the second lawsuit on the grounds of improper claim splitting because, although the second suit was based upon different conduct, it was still part of the same series of transactions. *Id.* at 843.

Like the second lawsuit in *Vanover*, this action must be dismissed with prejudice as Plaintiffs improperly split the claims raised herein from those raised in *Monarch I*. As set forth above, both prongs of the test are met: (a) the parties are identical, and (b) the claims in each action indisputably arise from the same series of transactions as they involve the exact same underlying wire transactions and Chase's handling of those transactions. The overlap in the allegations of the *Monarch I* Complaint and the Amended Complaint here plainly demonstrates that the claims here—however specious—should have been brought in *Monarch I*. No matter the label Plaintiffs apply to their purported claims, Chase's handling of the wire transactions at issue in each case form the basis for each suit. Both *Monarch I* and this action therefore arise from the same nucleus of operative facts, and the wire transactions underlying each action are related in time, space, origin and motivation, and form a convenient trial unit. The Court should therefore dismiss the Amended Complaint with prejudice for improper claim splitting.

**II.      Plaintiffs' Claim for Breach of Contract Fails as a Matter of Law.**

**A.       Plaintiffs Fail to Demonstrate Standing as a Third-Party Beneficiary.**

Count I for breach of the DAA fails as a matter of law as Plaintiffs fail to allege standing as a third-party beneficiary of the DAA. To state a claim for breach of contract as a third-party beneficiary, a non-party to the contract must allege "(1) a contract; (2) an intent that the contract primarily and directly benefits the third party; (3) breach of the contract; and (4) resulting damages to the third party." *Caretta Trucking, Inc. v. Cheoy Lee Shipyards, Ltd*., 647 So. 2d 1028, 1031 (Fla. 4th DCA 1994). "A party is an intended beneficiary only if the parties to the contract clearly express, or the contract itself expresses, an intent to ***primarily and directly*** benefit the third party or a class of persons to which that party claims to belong*." Id*. (emphasis added); *see also Jenne v. Church & Tower, Inc.*, 814 So. 2d 522, 524 (Fla. 4th DCA 2002) (courts look to the terms of

the contract to find a clear or manifest intent to benefit third party). Knowledge that the agreement will benefit a third party who is identified in the contract is not enough to transform the third party into an "intended" beneficiary. *Hawaiian Airlines, Inc. v. AAR Aircraft Servs., Inc.*, 167 F. Supp. 3d 1311, 1319 (S.D. Fla. 2016). "Indeed, even though a third party is referenced in [the] agreement, the third party is merely an incidental beneficiary absent express evidence that the contracting parties intended to bestow a direct benefit on the third party." *Id.*

Plaintiffs allege the Section D.1.b. of the DAA allowing Chase customers to "authorize a third party to transfer funds to or from [its] account"[6] supports Plaintiffs' third-party beneficiary standing because the provision "was primarily intended to benefit third-party holders of non-JPMC accounts because non-JPMC customers are the parties that would be on the other end of transfers to or from JPMC accounts." DE 17 at ¶¶ 64-66. This conclusory allegation is woefully insufficient to support a claim that the DAA expresses an intent to primarily and directly benefit Plaintiffs.

Analysis of the provision at issue—Section A.2. of the DAA—makes clear that it was inserted primarily for the benefit of ***Chase's accountholders***. Section A.2. states: "***You*** may authorize a third party to transfer funds to or from ***your account*** by providing your account number and your routing number. These transfers may use various payment networks and may take various forms, such as…[o]ne-time or recurring charges to your account to a utility payment or to pay other bills…." (Emphasis added). The purpose of this section of the DAA is to identify the various types of electronic funds transfer (EFT) services Chase customers may utilize with respect to their accounts (the others being Debit and ATM cards, online banking and Chase mobile, telephone banking and overdraft protection services), not to identify any rights or benefits that third parties

---

[6] Plaintiffs refer to Section D.1.b. of the DAA for the quotation in paragraph 64 of the Amended Complaint, but neither Section D.1.b. or any of Section of the DAA contain this precise language.

may derive from the customer's account. Indeed, Section I.3. makes clear that the provisions relating to refusal of transactions are "generally [] to protect *you* or *us*." (Emphasis added). None of the other provisions of the DAA reflect an intent that the agreement primarily and directly benefits Plaintiffs. Rather, the DAA is clear that it is a contract solely between the customer and Chase governing the customer's account. *See* DAA at p. 3 ("This agreement is the contract that governs *your* account."; "Whether you have a personal or business account, this document is the basic agreement *between you and us*.") (emphasis added).

Florida law similarly does not recognize third parties as beneficiaries with rights under a customer's account agreement with its financial institution. *See Morgan Stanley DW Inc. v. Halliday*, 873 So. 2d 400, 403 (Fla. 4th DCA 2004) (income beneficiary of a trust was not a third-party beneficiary of the account agreement between brokerage firm and the trust; although account agreement governed the obligations between the brokerage firm and the trust, it did not clearly express an intent to primarily and directly benefit third-party income beneficiary of the trust).

Accordingly, Count I should be dismissed with prejudice as Plaintiffs lack standing to sue under the DAA.

**B.** **The DAA Contradicts Plaintiffs' Breach of Contract Claim.**

Even if Plaintiffs could enforce an agreement to which they are not a party (they cannot), Count I should still be dismissed with prejudice as the claim is directly contradicted by the DAA. It is well-settled "[a] district court can generally consider exhibits attached to a complaint in ruling on a motion to dismiss, and if the allegations of the complaint about a particular exhibit conflict with the contents of the exhibit itself, the exhibit controls." *Hoefling v. City of Miami*, 811 F.3d 1271, 1277 (11th Cir. 2016).

Here, Plaintiffs—citing to Section D.2.d. of the DAA[7]—allege "JPMC could only refuse to honor [transfers to or from its customer's account] if a customer reported his or her card lost or stolen or when 'JPMC reasonably believed there may be fraudulent, suspicious or illegal activity.'" DE 17 at ¶¶ 65, 79. Plaintiffs' allegation is wrong. Plaintiffs ignore several other sections of the DAA which clearly reflect Chase has *__no obligation__* to honor transactions to or from a customer's account and has *__no liability__* in refusing transactions. With respect to deposits into the customer's account, Section A.6. provides in pertinent part:

> We may refuse a deposit, or part of a deposit, at any time. We also may refuse a deposit after initially accepting it. We can reverse any amount we've added to your balance for a deposit….We will not be liable to you for refusing a deposit, even if it causes us to decline any transactions you have already made.

And for all types of transactions, Section I.3. provides in pertinent part:

> There are many reasons we may decline or prevent transactions to or from your account, but we generally do it to protect you or us, or to comply with legal requirements. *__We may decline or prevent any or all transactions to or from your account.__* We may refuse, freeze, reverse or delay any specific withdrawal, payment or transfer of funds to or from your account, or we may remove funds from your account to hold them pending investigation, including in one *__or more__* of the following circumstances:
> • Your account is involved in any legal or administrative proceeding;…
> • We suspect that you may be the victim of a fraud, scam or financial exploitation, even though you have authorized the transaction(s);
> • We suspect that any transaction may involve illegal activity or may be fraudulent;
> • We are complying in our sole judgment, with any federal, state or local law, rule or regulation, including federal asset control and sanction rules and anti-money laundering rules, or with our policies adopted to assure that we comply with those laws, rules or regulations; or
> • We reasonably believe that doing so is necessary to avoid a loss or reduce risk to us.
> ***
> *__We will have no liability for any action we take under this section.__* (Emphasis added).

---

[7] Plaintiffs again reference the wrong provision of the DAA. Section B.4. of the DAA attached to the Amended Complaint is the Section where Plaintiffs' quoted language can be found.

These provisions make clear that Chase may reject or cancel any transactions or deposits to or from a customer's account for many reasons, not just for lost or stolen debit cards or for fraudulent, suspicious or illegal activity as Plaintiffs allege. If a transaction is declined because Chase "suspects" it may involve illegal activity, or because Chase "in its sole judgment" believes it is complying with anti-money laundering rules or with Chase's policies, or because the account is involved in a legal or administrative proceeding (like this action or the Congressional Subpoena), or for other reasons not mentioned, Chase has ***no liability***. These provisions of the DAA control over Plaintiffs' conflicting allegations. Because the plain language of the DAA reflects that Chase "may decline or prevent any or all transactions" to or from its customers' accounts and Chase has "no liability" to its customers when it does, Count I must be dismissed with prejudice.

III.    **Plaintiffs' Claims Under Article 4A Must be Dismissed with Prejudice as Plaintiffs Cannot Under Any Set of Facts State a Claim Against Chase.**

A.    **Plaintiffs Lack Standing to Sue Under Article 4A.**

Like Count I, Plaintiffs also lack standing to sue Chase under Article 4A because Plaintiffs are not in privity with Chase. Article 4A limits liability to those who are in privity with each other in the funds transfer. *See Commonwealth Land Title Ins. Corp. v. Regions Bank*, No. 07-36978, 2008 WL 744061, at *4-*5 (11th Cir. Feb. 25, 2008). In other words, "Article 4A provides a payment mechanism by which each party in a funds transfer transaction owes a duty of payment to the party with whom it is in privity, and which carried out its funds transfer instruction…. 'The sender [of a payment order] is only obligated to pay the receiving bank. The payment order is not like a negotiable instrument which may vest rights in some third person.'" *Id*. (citations omitted).

Article 4A's remedial scheme imposes a privity requirement so that an originator of a wire transfer can only recover against the bank to which it provided the payment order (i.e., the originator's bank), and not against other parties in the funds transfer as a whole. Similarly, the

beneficiary of a wire transfer can only recover against the beneficiary's bank (i.e., the bank with whom the beneficiary dealt with directly), and not against the originator or the originator's bank.

"To allow a party to, in effect, skip over the bank with which it dealt directly, and go to the next bank in the chain would result in uncertainty as to rights and liabilities, would create a risk of multiple or inconsistent liabilities, and would require intermediary banks to investigate the financial circumstances and various legal relations of the other parties to the transfer." *Id.* (citing *Grain Traders, Inc. v. Citibank, N.A.*, 160 F.3d 97, 101 (2d Cir. 1998)); *see also Grain Traders*, 160 F.3d at 101 (finding New York's equivalent to Fla. Stat. § 670.402, which Plaintiffs sue on here, requires privity and liability only attaches between the parties to a *particular* payment order, not between the parties to the funds transfer as a whole); *Frankel-Ross v. Congregation OHR Hatalmud, OHR*, No. 15-CIV-6566, 2016 WL 4939074, at *1 (S.D.N.Y. Sept. 12, 2016) (dismissing claim of originator of wire against the beneficiary's bank because originator was only in privity with her bank who she used to send the wire); *Receivers of Sabena SA v. Deutsche Bank A.G.,* 142 A.D.3d 242, 255, 36 N.Y.S.3d 95, 105 (2016) ("'sound policy reasons' support Article 4–A's requirement that each party to an EFT seek redress for a failed transfer only against a party with which it is in direct privity in the chain of payment orders").

For claims under Section 670.402 where Chase is a receiving bank sending a payment order to the next bank in the chain, the plain language of the statute confirms exactly to whom Chase's obligations flow, and it is not to Plaintiffs. *See* Fla. Stat. § 670.402(2), (3) ("With respect to a payment order…, acceptance of the order by the [receiving] bank obliges the sender [Chase] ***to pay the [receiving] bank*** the amount of the order [or the sender's order]…") (emphasis added). The comments to Section 670.402 make this privity requirement undeniably clear:

> Acceptance of the order by the receiving bank creates an obligation of the sender to pay the receiving bank the amount of the order. ***That is the extent of the sender's***

> ***liability to the receiving bank and no other person has any rights against the sender***
> ***with respect to the sender's order***. Fla. Stat. § 670.402 at cmt. 3 (emphasis added).

In other words, when Chase receives a payment order and sends the payment on to the next bank in the chain, Chase is liable to the receiving bank to which Chase sent the payment order and no one else. And because Article 4A does not extend liability to parties not in privity with the bank, such liability cannot otherwise be imposed because "the bank owes no duty to any party to the funds transfer except as provided in this chapter or by express agreement." Fla. Stat. § 670.212.

To the extent Plaintiffs attempt to impose liability on Chase as a beneficiary bank who is obligated to honor the payment orders issued by Plaintiffs (the senders), Article 4A is similarly clear that Chase, as a beneficiary bank, owes neither Plaintiffs nor the originating bank any duty with respect to the transaction:

> Acceptance by the beneficiary's bank ***does not create any obligation to the sender***.
> Acceptance by the beneficiary's bank means that the bank is liable ***to the beneficiary***
> for the amount of the order. Fla. Stat. § 670.209 at cmt. 4 (emphasis added).

Here, Plaintiffs' claims arise from Chase allegedly accepting and improperly cancelling payment orders placed by Monarch's customers with Chase that were destined for either Monarch's bank or an intermediary in the transaction. *See* DE 17 at ¶¶ 96-99, 105, 106. In such case, Chase—the originators' bank who received the original payment order—dealt solely with (a) Monarch's customers (the originators), and (b) either Monarch's bank (the beneficiary bank) or an intermediary bank. Plaintiffs also allege portions of their claims arise from Chase accepting and improperly cancelling payment orders placed by Gitman to Gitman's mortgagee who banked with Chase. *Id.* ¶¶ 100-106. In this instance, Chase—the beneficiary's bank who would have credited the beneficiary's account—would have dealt solely with (a) Gitman's mortgagee (the beneficiary), and (b) either Gitman's bank (the originator's bank) or an intermediary bank, but certainly not Gitman. In yet another circumstance, Plaintiffs allege Chase improperly cancelled payment orders

as an intermediary bank in the chain where Chase only dealt with the originator's bank and the beneficiary's bank (but not Plaintiffs). *Id.* at ¶ 96. Stated simply, under no set of facts was Chase ever in privity with Plaintiffs as Chase never dealt directly with Plaintiffs in the funds transfer.

Thus, Plaintiffs lack standing to sue Chase under Article 4A because they were never in privity with Chase during the relevant wire transactions. *See, e.g., Wellton Int'l Express v. Bank of China (Hong Kong)*, 612 F. Supp. 3d 358, 364 (S.D.N.Y. 2020) ("as the beneficiary bank, [defendant] was not a party to the payment order. ... Because there is a lack of privity between Plaintiffs and [defendant], Plaintiffs cannot maintain a cause of action against either defendant."). Count II of the Amended Complaint must therefore be dismissed with prejudice.

**B.      There is No Such Thing as a Wrongful Cancellation of a Payment Order.**

Even if Plaintiffs could bring an Article 4A claim against Chase, their allegations that Chase accepted the payment orders and then improperly cancelled them are without legal merit because there is no such thing as a "wrongful cancellation" of a payment order. In Count II, Plaintiffs contend after Chase allegedly accepted the payment orders, Chase was obligated to pay the orders and could only cancel them "in good faith." *Id.* at ¶ 106.[8] This, however, is not the law.

After a payment order has been accepted by a receiving bank, the receiving bank can cancel or amend the payment order pursuant to Section 670.211, Florida Statutes, which provides:

> (2) Subject to subsection (1), a communication by the sender canceling or amending a payment order is effective to cancel or amend the order if notice of the communication is received at a time and in a manner affording the receiving bank a reasonable opportunity to act on the communication before the bank accepts the payment order.

---

[8] Chase can only accept a payment order by "executing" the order, which means Chase issued a conforming payment order to either the intermediary or beneficiary bank intended to carry out the order that Chase received from the originator or the originator's bank. *See* Fla. Stat. §§ 670.209(1), 670.301(1). Chase never did this. This is critical because a receiving bank has **_no obligation_** to accept or execute a payment order under Article 4A. Fla. Stat. §§ 670.212, 670.302 at cmt. 1, 670.21 at cmt. 3; *see also* DE 15 at pp. 13-16.

(3) After a payment order has been accepted, cancellation or amendment of the order is not effective unless the receiving bank agrees or a funds-transfer system rule allows cancellation or amendment without agreement of the bank.

A payment order may be unilaterally cancelled by the sender prior to the receiving bank accepting the payment order, but if the receiving bank has already accepted the order, then cancellation can only occur if the receiving bank agrees to the cancellation, or a funds-transfer system rule allows cancellation. Comment 3 provides helpful insight:

If the receiving bank has not yet accepted the order, there is no reason why the sender should not be able to cancel or amend the order unilaterally so long as the requirements of subsections [1] and [2] are met. If the receiving bank has accepted the order, it is possible to cancel or amend but only if the requirements of subsection [3] are met.

And "[i]f an accepted payment order is cancelled, the acceptance is nullified and ***no person has any right or obligation based upon the acceptance.***" Fla. Stat. § 670.211(5) (emphasis added). Stated simply, "[t]here is no concept of wrongful cancellation…of a payment order. If the conditions stated in this section are not met, the attempted cancellation…is not effective. If the stated conditions are met, the cancellation…is effective and rightful." *Id.* at cmt. 1. Even accepting Plaintiffs' allegations as true—that Chase accepted and later cancelled the payment orders—such cancellation, as a matter of law, does not give rise to liability. Because (a) "good faith" is not a component of cancelling a payment order, and (b) no person has any rights based upon acceptance of a payment order that is cancelled, Count II must be dismissed with prejudice.

## IV. In the Alternative, the Court Should Strike the Amended Complaint's Immaterial, Impertinent and Scandalous Allegations.

### A. The Allegations Concerning Chase's Size and "Crusade" Against Plaintiffs Are Unconnected with Plaintiffs' Claims.

Under Federal Rule of Civil Procedure 12(f), a party may move to strike "any redundant, immaterial, impertinent, or scandalous matter" in the pleadings, and "to clean up the pleadings,

remove irrelevant or otherwise confusing materials, and avoid unnecessary forays into immaterial matters." *Blake v. Batmasian*, 318 F.R.D. 698, 700 (S.D. Fla. 2017). Scandalous matter is that which is grossly disgraceful and irrelevant to the action or defense. *Id.* at 701 n.4. Plaintiffs' immaterial and scandalous allegations satisfy this standard.

Plaintiffs seek contractual and statutory relief only. The elements of their breach of contract claim do not in any way hinge upon Chase's size, motivations or ill-will toward Plaintiffs. Nor are such allegations pertinent to Chase's obligations under Article 4A, which, as set forth above, do not involve Chase's "good faith" in allegedly cancelling the payment orders. Accordingly, such allegations should be stricken. *See e.g. Morris v. Bischoff*, 96-1384-CIV-T-17A, 1997 WL 128114, at *7 (M.D. Fla. Mar. 4, 1997) ("A claim for willful breach of contract is still a claim for breach of contract, and does not give rise to tort remedies, e.g., punitive damages, no matter how oppressive the breach"); *Franceschini v. Allstate Floridian Ins. Co.*, 6:06CV1283 ORL31JGG, 2007 WL 646957, at *3 (M.D. Fla. Feb. 27, 2007) (striking from contract claim "allegations of intentional and fraudulent conduct" as "scandalous" and "immaterial"); *Gould v. Fla. A. U. Bd. of Trustees*, 10-81210-CIV, 2011 WL 13227873, at *5 (S.D. Fla. Nov. 15, 2011) (striking "scandalous" and "impertinent" allegations about university officials supposedly abusing their positions to divert funds from philosophy department); *S.Y. v. Naples Hotel Co.*, 476 F. Supp. 3d 1251, 1259 (M.D. Fla. 2020) (striking "irrelevant" allegations concerning "sex trafficking in general and its relationship to the hospitality industry").

The Amended Complaint's introductory quotation from Joseph E. Steiglitz regarding the accountability of "big banks" has zero connection to Chase or Plaintiffs' claims. Additionally, paragraphs 1-10 of the Amended Complaint regarding Chase allegedly choosing with which

customers it chooses to bank based upon political motivations are especially scandalous, including

the unnecessarily harsh and disgraceful language such as:

- Plaintiffs' reference to Chase being on a "crusade" and "reigning horror" against Plaintiffs (DE 17 at ¶¶ 2, 4, 5);
- Plaintiffs' allegation that the case presents a "course of events straight out of a comedy routine, but without the humor" (*Id.* at ¶ 5);
- "The sorts of activities described here are, objectively, pathetic and reflect a shoddily run, Keystone cops' operation worthy of a mismanaged candy store staffed by incompetent hacks" (*Id.* at ¶ 7);
- References to Chase's "prestige and power" (*Id.* at ¶¶ 1, 3);
- Reference to a general "consensus of opinion" (*Id.* at ¶ 3);
- Alleging Chase "[u]nlawfully withheld [evidence from 2021 Action]" (*Id.* at ¶ 8);
- Alleging Chase "has trained a keen eye on anyone or anything with ties, whether real or imagined, to its disfavored politics or politicians" (*Id.* at ¶ 9);
- Alleging Chase is biased, manufacturers outlandish claims against persons for which it harbors political ill will (*Id.* at ¶ 10).

Not only are these allegations impertinent and scandalous, but most cannot be reconciled

with the finding in *Monarch I* that "Plaintiffs entirely fail[ed] to provide evidence from which a

reasonable juror could infer that Chase acted with express malice" in connection with the alleged

defamatory statements that were the subject of *Monarch I*. RJN-3 at p. 10. As such, the purpose of

these allegations is to confuse the issues before the Court and unfairly paint Chase in an

unflattering light based upon speculation and allegations that Plaintiffs failed to prove in *Monarch

I*. The Court should strike the introductory quotation and allegations 1-10 of the Amended

Complaint and prohibit Plaintiffs from asserting them in any subsequent pleading.

**B.      Consequential, Special and Punitive Damages Are Unavailable.**

Prayers for relief that are not available under the applicable law are properly subject to a

motion to strike. *Hodge v. Orlando Utilities Commn.*, 609CV-1059-ORL-19DAB, 2009 WL

4042930, at *4 (M.D. Fla. Nov. 23, 2009). Here, Section I.6. of the DAA provides:

> WE   WILL   NOT   BE   LIABLE   FOR   INDIRECT,   SPECIAL,   OR
> CONSEQUENTIAL DAMAGES REGARDLESS OF THE FORM OF ACTION
> AND EVEN IF WE HAVE BEEN ADVISED OF THE POSSIBILITY OF SUCH

DAMAGES. IF WE FAIL TO STOP PAYMENT ON AN ITEM, OR PAY AN ITEM BEARING AN UNAUTHORIZED SIGNATURE, FORGED SIGNATURE, OR FORGED ENDORSEMENT OR ALTERATION, OUR LIABILITY, IF ANY, WILL BE LIMITED TO THE FACE AMOUNT OF THE ITEM.

Provisions like this are enforced. *See Amoco Oil Co. v. Gomez*, 125 F. Supp. 2d 492, 511 (S.D. Fla. 2000) (enforcing clause to limit plaintiff to compensatory damages, and precluding punitive, incidental, consequential or exemplary damages); *CC-Aventura, Inc. v. The Weitz Co., LLC*, 06-21598-CIV, 2009 WL 3326806, at *6 (S.D. Fla. Oct. 9, 2009). If the Court finds Plaintiffs are entitled to enforce the DAA as third-party beneficiaries (which, respectfully, it should not), then Plaintiffs are bound by the limitation of remedies provision in the DAA.

Similarly, punitive damages are not otherwise available for the claims alleged. *Carter v. Killingsworth*, 477 Fed. Appx. 647, 648 (11th Cir. 2012); *see also* 670.106 ("neither consequential or special nor penal damages may be had except as specifically provided in [the Uniform Commercial Code] or by other rule of law"). Assuming Plaintiffs' claims survive the dispositive arguments referenced above, Plaintiffs' prayer for consequential, special and punitive damages must be stricken as such damages are not available to Plaintiffs.

WHEREFORE, Chase respectfully requests the Court enter an Order dismissing the Amended Complaint with prejudice and awarding such other relief as may be just and necessary under the circumstances. In the alternative, Chase requests the Court strike from the Amended Complaint (a) the impertinent and scandalous matters referenced herein, and (b) the request for consequential, special and punitive damages.

Respectfully submitted this 13th day of July, 2023

*Counsel for Defendant, JPMorgan Chase Bank, N.A.*

GREENBERG TRAURIG, P.A.
401 East Las Olas Boulevard
Suite 2000
Fort Lauderdale, Florida 33301
Telephone: (954) 765-0500
Facsimile: (954) 765-1477

By: */s/ Courtney M. Keller*
    JEFFREY ALLAN HIRSCH
    Florida Bar No. 199850
    Email: hirschj@gtlaw.com;
    yeargina@gtlaw.com; FLService@gtlaw.com
    GERALD ATKINS
    Florida Bar No. 1032828
    Email: Jake.Atkins@gtlaw.com

    -AND-

    COURTNEY M. KELLER, ESQ.
    Florida Bar No. 0028668
    GREENBERG TRAURIG, P.A.
    450 South Orange Avenue, Suite 650
    Orlando, Florida 32801
    Telephone: (407) 420-1000
    Facsimile: (407) 841-1295
    Email: kellerc@gtlaw.com
             nef-iws@gtlaw.com

## CERTIFICATE OF SERVICE

    I HEREBY CERTIFY that on this 13th day of July, 2023, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF.

                        */s/Courtney M. Keller*
                        Courtney M. Keller

*ACTIVE 688732316v1*